**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

KEITH VINCENT STOUT,

     Plaintiff,

     v.

ERIC T. REUSCHLING, *Trooper #5766*, *in*         Civil Action No. TDC-14-1555
*his individual capacity*, and
STEVEN B. KOCH, *Sergeant*, *in his*
*individual capacity*,

     Defendants.

**MEMORANDUM OPINION**

Following a traffic stop, Maryland State Troopers arrested Plaintiff Keith Vincent Stout for driving under the influence of alcohol. Stout alleges that, while in custody, troopers assaulted him while making racially derogatory statements. He has filed suit against Trooper Eric T. Reuschling and Sergeant Steven B. Koch (collectively, "Defendants") in their individual capacities under 42 U.S.C. § 1983, alleging violations of the Fourth Amendment, Due Process Clause, and Equal Protection Clause of the United States Constitution; 42 U.S.C. § 1981; and Articles 24 and 26 of the Maryland Declaration of Rights.

Presently pending is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 10. The Motion is fully briefed, and the Court heard oral argument on the Motion on March 23, 2015. *See* ECF No. 16. For the reasons that follow, the Motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I.   Undisputed Facts

The following facts are undisputed and presented in the light most favorable to Stout, the nonmoving party.  At 11:50 p.m. on December 24, 2012, Trooper Moore of the Maryland State Police pulled over a van on Maryland Route 5 in St. Mary's County, Maryland.  Stout Aff. ¶ 1, ECF No. 13-1.  The driver, Stout, is an African American male who was coming from a Christmas party where he had been drinking.  *Id.* ¶ 2.  He declined to undergo any field sobriety tests.  *Id.*  Trooper Reuschling arrived on the scene, handcuffed Stout, and drove Stout to Maryland State Police Barrack "T" in Leonardtown, Maryland.  *Id.* ¶ 3.  Once at the barrack, Trooper Reuschling had Stout sit on a bench in a room and began to fill out paperwork.  *Id.* ¶ 7.  Shortly afterward, Sergeant Koch entered the room.  *Id.* ¶ 9.  An altercation ensued among Sergeant Koch, Trooper Reuschling, and Stout.  *Id.* ¶ 10.  Trooper Reuschling then drove Stout to St. Mary's County Detention Center in Leonardtown.  *Id.* ¶ 14.  When Stout was released from custody on December 26, he went to the hospital to seek treatment for his injuries.  *Id.*  He filed a complaint with the Department of Maryland State Police about the treatment he received in custody.  *Id.*

Stout was charged with driving under the influence of alcohol, second degree assault, and malicious destruction of property, for striking Sergeant Koch with an oscillating fan and breaking it.  *See* Defs.' Mem. Supp. Mot. Dismiss or Alternative Mot. Summ. J. ("Defs.' Mem.") Ex. 1, ECF No. 10-2.  A breath test log shows that Stout's blood alcohol level the following morning at 8:15 a.m. was .17.  Defs.' Mem. Ex. 4, ECF No. 10-5.  By 2:44 p.m. that afternoon, Stout's blood alcohol level had dropped to .04.  *Id.*

2

On May 12, 2014, Stout filed this action against Defendants under § 1983, claiming excessive force in violation of the Fourth Amendment (Count I); a violation of the Due Process Clause of the Fourteenth Amendment (Count II); and a violation of the Equal Protection Clause of the Fourteenth Amendment (Count III). *See* ECF No. 1. In addition, Stout brings a discrimination claim under § 1981 (Count IV) and a claim for violations of Articles 24 and 26 of the Maryland Declaration of Rights (Count V). *Id.* On August 8, 2014, Defendants filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, to which they attached a Statement of Charges, the declaration of Trooper Reuschling, the declaration of Sergeant Koch, and the breath test log from the night of Stout's arrest. *See* ECF No. 10. In opposition, Stout presented an affidavit of his own and a supplemental criminal investigation report showing that he was initially pulled over for speeding. *See* ECF Nos. 13-1, 13-2. The parties' exhibits present diametrically opposing accounts of the events, as detailed below.

## II.    Stout's Account

According to Stout, after being pulled over, Stout admitted to drinking and told Trooper Moore that he had previously worked in law enforcement and that he would fully cooperate. Stout Aff. ¶ 2. When Trooper Moore directed Stout to get out of the van, Stout complied. *Id.* ¶ 3. After Trooper Moore brought him to the back of the van, other law enforcement officers arrived on the scene, including Trooper Reuschling. *Id.* Trooper Reuschling handcuffed Stout's hands behind his back, threw Stout in the back of a police car, and, without securing Stout's seatbelt, drove Stout to Maryland State Police Barrack "T" in Leonardtown, Maryland. *Id.*

During an otherwise quiet ride, Stout asked why he was being taken to the barrack. *Id.* ¶ 4. Trooper Reuschling responded that he could take Stout wherever he wanted and that "Obama can't help your Black ass now." *Id.* After arriving at the barrack, Trooper Reuschling

3

grabbed Stout by the back of his neck and led him through the back entrance. *Id.* ¶ 5. Stout did not resist. *Id.* Trooper Reuschling directed Stout to enter a small, dark room. *Id.* ¶ 6. Nervous about this room, Stout declined to enter. *Id.* Instead, Sergeant Koch, now on the scene, directed Trooper Reuschling to take Stout to a room down the hall, where Trooper Reuschling ordered Stout, still handcuffed, to sit on a bench against the wall. *Id.* ¶¶ 6–7. Stout stayed on the bench without resistance while Trooper Reuschling filled out paperwork. *Id.* ¶ 7.

When Sergeant Koch entered the room, Stout called out to him several times to get his attention. *Id.* ¶ 9. After briefly speaking with Trooper Reuschling, Sergeant Koch looked angrily at Stout and walked toward the bench. *Id.* Stout rose from the bench, believing Sergeant Koch was going to hurt him. *Id.* Sergeant Koch grabbed Stout by his neck and shirt, and threw Stout to the floor. *Id.* ¶¶ 9–10. Stout hit his chest on the bench on the way down, causing his ribs to fracture. *Id.* ¶ 10. As Stout lay helpless and handcuffed on the floor, Defendants punched and kicked him for about 45 seconds, causing bruises. *Id.* Stout called loudly for help, then tried to wiggle underneath the bench for protection, but the assault continued until another trooper told Defendants to stop. *Id.* ¶¶ 10–11. Defendants then laughed, and Sergeant Koch said to Stout, "You don't know who you're fucking with, nigger." *Id.* ¶ 11. When Sergeant Koch picked up Stout, his arm struck Stout's lip and caused it to bleed. *Id.* ¶ 12. He then said, "Go ahead and take his ass to jail." *Id.* Stout asked for medical attention at St. Mary's Detention Center because he had trouble breathing, but the infirmary would only give him ibuprofen. *Id.* ¶ 14. Stout did not throw a fan at Sergeant Koch or act belligerently at any point while at the barrack. *Id.* ¶¶ 8, 13. Although he had been drinking, he was not extremely intoxicated. *Id.* ¶ 13.

4

## III.   Defendants' Account

According to Defendants, when Trooper Reuschling arrived on the scene of the car stop, he observed that Stout smelled strongly of alcohol and presented other signs of intoxication, so he asked Stout to exit his van and to undergo field sobriety tests. Reuschling Decl. ¶¶ 2–4, ECF No. 10-3. When Stout refused, Trooper Reuschling arrested him and drove him to the barrack. *Id.* ¶ 4. Trooper Reuschling fastened Stout's seatbelt for the ride. *Id.* Once at the barrack, Trooper Reuschling searched Stout in Sergeant Koch's presence, then handcuffed one of Stout's hands to the bench along the back wall in the troopers' room. *Id.* ¶ 5. After Stout refused to take an alcohol breath test, Trooper Reuschling returned to his desk to start processing the paperwork. *Id.* ¶ 6.

At that point, Stout became more aggressive and began to act erratically, yell, and use foul language. *See id.* ¶ 7; Koch Decl. ¶ 6, ECF No. 10-4. Stout climbed off the bench and laid himself down on the floor, where he used his free hand to punch the wall. Reuschling Decl. ¶ 7; Koch Decl. ¶ 7. As Sergeant Koch lifted Stout back onto the bench, Stout attempted to swing at him with his free hand. Koch Decl. ¶¶ 7–8. Stout missed Sergeant Koch but grew more aggressive. *Id.* When Sergeant Koch turned his back to Stout to address Trooper Reuschling, Stout grabbed a standing oscillating fan next to the bench and threw it at Sergeant Koch. Reuschling Decl. ¶ 8; Koch Decl. ¶ 9. The fan hit Sergeant Koch's back and fell to the floor, broken in two pieces. Reuschling Decl. ¶ 8; Koch Decl. ¶ 9. Defendants then fully handcuffed Stout and finished the paperwork so that Trooper Reuschling could transfer him to St. Mary's Detention Center. Reuschling Decl. ¶¶ 9–10; Koch Decl. ¶¶ 10–11. Defendants did not strike or kick Stout, did not hear Stout ask for medical assistance, and did not use any racial epithets or racially charged language during the incident. Reuschling Decl. ¶¶ 12–13; Koch Decl. ¶¶ 12–14.

## DISCUSSION

### I.    Legal Standard

Defendants have moved to dismiss or, in the alternative, for summary judgment and have attached four exhibits to their Motion, including declarations from both Sergeant Koch and Trooper Reuschling.  Defs.' Mem. Supp. Mot. Dismiss or Alternative Mot. Summ. J. ("Defs.' Mem.") Exs. 1–4, ECF Nos. 10-2, 10-3, 10-4, 10-5.  In response, Stout has submitted his own affidavit and a supplemental criminal investigation report.  *See* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss or Alternative Mot. Summ. J. ("Pl.'s Opp'n") Exs. 1–2, ECF Nos. 13-1, 13-2. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  When matters outside the pleadings are considered and not excluded, Rule 12(d) requires courts to treat such a motion as a Rule 56 motion for summary judgment.  Fed. R. Civ. P. 12(d).

During oral argument, Defendants clarified that Stout's Fourth Amendment and § 1981 claims involve legal issues that should be resolved as a motion to dismiss under Rule 12(b)(6). The Court considers these issues under Rule 12(b)(6) without consideration of any of the attached exhibits.  To defeat a motion to dismiss under 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009).  A claim is plausible when the facts pled allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Legal conclusions or conclusory statements do not suffice.  *Id.*  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most

favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Defendants ask the Court to assess the remaining claims through a motion for summary judgment under Rule 56, with consideration of the attached exhibits. Ordinarily, converting a motion to dismiss into a motion for summary judgment "is not appropriate when the parties have not had an opportunity to conduct reasonable discovery." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, __ F.3d __, 2015 WL 1137142, at * 7 (4th Cir. Mar. 16, 2015). Stout maintained during oral argument, however, that the record before the Court is sufficient to proceed on summary judgment. The Court therefore construes the motion as to the remaining issues as a motion for summary judgment.

Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## II.   Motion to Dismiss

### A.   Fourth Amendment and Article 26

As a preliminary matter, Defendants argue that Stout's excessive force claims under the Fourth Amendment in Count I and Article 26 of the Maryland Declaration of Rights in Count V must be dismissed because the Fourth Amendment only applies prior to or during an arrest. The

Fourth Amendment protects the right to be free from seizures involving excessive force. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (citation and internal quotation marks omitted).  Under Maryland law, Article 26 of the Maryland Declaration of Rights, which concerns warrants for searches and seizures, is construed together with the Fourth Amendment. *Richardson v. McGriff*, 762 A.2d 48, 56 (Md. 2000).

Fourth Amendment protections against excessive force do not extend to arrestees or pretrial detainees, and only apply "during the course of an arrest, investigatory stop, or other 'seizure' of a person." *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008), *abrograted on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam).  Once a person has been arrested or detained, as Stout was here, excessive force claims "'are governed by the Due Process Clause of the Fourteenth Amendment.'" *Id.* (quoting *Young v. Prince George's Cnty., Md.*, 355 F.3d 751, 758 (4th Cir. 2004)).  By extension, this rule applies to Article 26.  *See Richardson*, 762 A.2d at 56.

In *Orem*, the United States Court of Appeals for the Fourth Circuit found that a claim of excessive force against a plaintiff being transported in a police car from the scene of the arrest to jail is governed by the Due Process Clause, not the Fourth Amendment. *Orem*, 523 F.3d at 446. Thus, Stout's claim of post-arrest excessive force perpetrated at the state police barracks is a Fourteenth Amendment issue.  Indeed, Stout concedes that *Orem* is controlling authority on this issue, while reserving the right to argue to the Fourth Circuit that *Orem* was wrongly decided. *See* Pl.'s Opp'n at 15.  Accordingly, Stout's excessive force claims under the Fourth Amendment and Article 26 are dismissed.

**B.     Section 1981**

Defendants further argue that Stout's § 1981 claim in Count IV must be dismissed because § 1983 provides the sole avenue through which to recover for the constitutional violations of a state actor.  In relevant part, § 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licensees, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a) (2012).  Section 1981 prohibits intentional discrimination based on race in contracting and certain other activities, *Gen. Bldg. Contractor's Ass'n v. Pennsylvania*, 458 U.S. 375, 384-86, 391 (1982), and is frequently used to assert employment discrimination claims against private actors, *see, e.g.*, *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 211 (4th Cir. 2007); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999).  "[A] misuse of governmental power motivated by racial animus," including law enforcement misconduct, "comes squarely within the 'equal benefit' and 'like punishment' clauses of section 1983(a)." *Alexis v. McDonald's Rests. of Mass., Inc.*, 67 F.3d 341, 348 (1st Cir. 1995) (denying summary judgment on a § 1981 claim against a police officer who made a statement arguably conveying racial animus while making an arrest); *see Evans v. McKay*, 869 F.2d 1341, 1344–45 (9th Cir. 1989) (reversing dismissal of § 1981 claim for alleged racially motivated seizure of cigarettes by the police); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1232 (7th Cir. 1984) (explaining that § 1981 applies to "racially motivated misuse of government power" in a police misconduct case), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005); *Mahone v. Waddle*, 564 F.2d 1018, 1028 (3d Cir. 1977) (holding that racially motivated police abuse of citizens falls within the equal benefits and like punishment clauses of § 1981); *Gray v. Maryland*, 228 F.

Supp. 2d 628, 639 (D. Md. 2002) (denying a motion to dismiss a § 1981 claim alleging a racially motivated law enforcement investigation).

Defendant argues that the Supreme Court and the Fourth Circuit have both held that 42 U.S.C. § 1983, which allows individuals to sue government officials who violate their constitutional rights, is the only avenue through which to enforce those rights against a "state actor," citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 736 (1989) and *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1989). In *Jett*, the Supreme Court stated: "We hold that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides for the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett*, 491 U.S. at 736. Congress then amended § 1981 through the Civil Rights Act of 1991 ("the 1991 Amendment") to add the following provision: "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C § 1981(c) (2012). The Ninth Circuit has since held that § 1981(c) effectively superseded *Jett* and established a private right of action under § 1981 against state actors. *Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1205 (9th Cir. 1996). The Fourth Circuit, however, held in *Dennis* that § 1981(c) does not alter the holding of *Jett*, such that "the § 1983 requirement that plaintiffs show an official policy or custom of discrimination also controls in § 1981 actions against state entities." *Dennis*, 55 F.3d at 156 (citation omitted).

Based on *Jett* and *Dennis*, Defendants assert that Stout's § 1981 claim is "redundant" of his § 1983 equal protection claim and must be dismissed. *See* Defs.' Mem. at 15. Closer examination of *Jett*, *Dennis*, and the 1991 Amendment, however, make clear that the rule

articulated in those cases applies only to lawsuits against state or municipal entities, not an action brought against a law enforcement officer in his individual capacity.  In *Jett*, the specific issue addressed by the Supreme Court was whether "§ 1981 provides an independent federal cause of action for damages against local government entities, and whether such a cause of action is broader than the damages remedy available under 42 U.S.C. § 1983, such that a municipality may be held liable for its employees' violations of § 1981 under a theory of *respondeat superior*," a form of liability unavailable under § 1983. *Jett*, 491 U.S. at 705.  In concluding that it does not, *Jett* emphasized that the consequence of the holding is that "the school district may not be held liable for its employees' violations of the rights enumerated in § 1981 under a theory of *respondeat superior*."  *Id.* at 738.  Thus, arguably, *Jett* only addressed whether § 1981 could be asserted as an independent cause of action against a state or municipal entity.

In *Dennis*, which involved a § 1981 action asserted against a county government, the Fourth Circuit acknowledged that the 1991 Amendment had changed the landscape, but concluded that it did not alter the "aspect of *Jett*" holding that "the § 1983 requirement that plaintiffs show an official policy of discrimination also controls in § 1981 actions against state entities." *Dennis*, 55 F.3d at 156 & n.1 (emphasis added).  The court then noted that "the correct reading of the amendment" is found in an opinion from the United States District Court for the Southern District of New York, *id.* at 156 n.1, which limits the currently applicable holding of *Jett* to the propositions that "(1) there is no vicarious liability for municipalities under Section 1981, and (2) municipal liability for public officials' violations of Section 1981 must be found under Section 1983 using the *Monell* analysis."  *Philippeaux v. N. Cent. Bronx Hosp.*, 871 F. Supp. 640, 655 (S.D.N.Y. 1994).  Thus, regardless of whether *Jett* was originally limited to § 1981 actions against state and municipal entities, it is now so limited.

In fact, since *Jett* and *Dennis*, § 1981 claims have proceeded against individual government officials. *See, e.g., Alexis*, 67 F.3d at 348; *Morrow v. Farrell*, 187 F. Supp. 2d 548, 553 (D. Md. 2002); *Gray*, 228 F. Supp. at 639.   To bar § 1981 claims against government officials sued in their individual capacity would be irreconcilable with the plain language of the 1991 Amendment, which provides that § 1981 protects against impairment of rights both "by nongovernmental discrimination" and "under color of State law." 42 U.S.C. § 1981(c).   Notably, the unpublished Fourth Circuit cases cited by Defendants involved claims against state or municipal entities, not government officials sued in their individual capacities.   *See Farmer v. Ramsay*, 43 F. App'x 547, 548, 553 n.8 (4th Cir. 2002) (finding no independent § 1981 cause of action against the University of Maryland School of Medicine); *Lewis v. Robeson Cnty.*, 63 F. App'x 134, 138 (4th Cir. 2003) (in a case against a county government agency, stating that "the § 1983 requirement that plaintiffs show an official policy or custom of discrimination controls in § 1981 actions against state entities").   Accordingly, the Motion to Dismiss the § 1981 claim is denied.

## III.     Motion for Summary Judgment

### A.     Excessive Force

In Counts II and V, Stout brings § 1983 claims for excessive force in violation of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights.   Defendants argue that they are entitled to summary judgment on those claims because, based on their version of the facts, the use of force was reasonable and the motivating factor was not to inflict unnecessary punishment.   This argument fails because, under Stout's facts, which are to be believed on a motion for summary judgment, a reasonable jury could conclude that Defendants violated Stout's due process rights.

Section 1983 allows individuals to sue government officials who violate their constitutional rights. 42 U.S.C. § 1983. Any excessive force analysis under § 1983 begins with identifying the constitutional right that the government official allegedly infringed. *Id.* Here, Stout alleges Fourteenth Amendment and Article 24 violations. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Rooted in the right to due process is the prohibition against using excessive force against an arrestee or pre-trial detainee. *Graham*, 490 U.S. at 395; *Orem*, 523 F.3d at 446. Similarly, Article 24 of the Maryland Declaration of Rights provides its own due process clause:

> [N]o man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

Maryland courts have generally construed Article 24 consistent with the Fourteenth Amendment. *See Griffin v. Bierman*, 941 A.2d 475, 489 (Md. 2008); *Okwa v. Harper*, 757 A.2d 118, 203–04 (Md. 2000); *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 971 A.2d 975, 982 (Md. Ct. Spec. App. 2009).

To establish an excessive force claim under the Due Process Clause of the Fourteenth Amendment, the plaintiff must show that the actor "'inflicted unnecessary and wanton pain and suffering.'" *Orem*, 523 F.3d at 446 (quoting *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998)). To determine whether this threshold has been met, courts "'must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). No particular

13

injury threshold is required to show excessive force under the Fourteenth Amendment.  *See Sawyer v. Asbury*, 537 F. App'x 283, 290 (4th Cir. 2013); *see also Wilkins v. Gaddy*, 559 U.S. 34, 39–40 (2010) (holding that there is no requirement that injury be more than *de minimis* to establish excessive force under the Eighth Amendment); *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013) (same).

Under his account, Stout was thrown over a bench to the ground and subjected to a 45-second beating at the hands of the two state troopers.  He suffered fractured ribs, several bruises, and a bloodied lip as a result.  At the time, he had been arrested for driving while intoxicated, was in a law enforcement facility, was handcuffed, and not resisting.  Other than calling out to get Sergeant Koch's attention, Stout did not provoke the troopers.  These facts support an inference that there was no need for the force used, that the amount of force used was disproportionate to the need for force, and that it was not applied in order to maintain discipline. *Orem*, 523 F.3d at 446.  The fact that the force was accompanied by a racial slur and the statement, "You don't know who you're fucking with," supports an inference that the beating was inflicted "maliciously and sadistically for the very purpose of causing harm." *Id.*

In *United States v. Cobb*, 905 F.2d 784 (4th Cir. 1990), the Fourth Circuit affirmed an excessive force conviction where officers, following an argument, beat a handcuffed, intoxicated arrestee for two hours, "insulting and ridiculing him the entire time." *Id.* at 785 (upholding criminal convictions under 18 U.S.C. § 242, the criminal analog to § 1983).  Although the beating in *Cobb* lasted significantly longer, the nature of the attack – the beating of a handcuffed, intoxicated detainee – similarly could be found to be "unnecessary and wanton pain and suffering."  Notably, in *Cobb*, excessive force was found even though the beating was preceded by an exchange of insults and a heated argument between the detainee and the police officers.

14

*Id.* at 785, 789 (concluding that "words alone do not justify the excessive use of force against a pretrial detainee"). Here, under Stout's version of events, there is no indication of provocation by Stout other than calling out to get Sergeant Koch's attention. *See* Stout Aff. ¶ 9. Indeed, the Fourth Circuit has found excessive force where the need to restore order was far greater than in this case. *Orem*, 523 F.3d at 444–45, 447 (finding that the use of a taser against an intoxicated arrestee was "wanton, sadistic, and not a good faith effort to restore discipline" even though the arrestee yelled, cursed, and banged her head against the police car window several times, because she was handcuffed, constrained at the ankles, and locked in the back of the police car, and that the location of the shocks – under her left breast and inside her left thigh – suggested that purpose was more to harm and embarrass the arrestee than to maintain order). *Cf. Smith v. Ray*, __ F.3d __, 2015 WL 1219476, at *1–2, *6–7 (4th Cir. Mar. 18, 2015) (holding in the Fourth Amendment context that summary judgment was properly denied on an excessive force claim when a police officer threw an individual to the ground, slammed his knee into her back, and wrenched her arm behind her back, apparently in response to the individual pulling her arm away when the officer had grabbed it and using a racial slur in asking what the officer was doing).

The authority cited by Defendants, offered to show that there was no excessive force under their version of events, is unhelpful in assessing the issue when the facts must be viewed in the light most favorable to Stout. In *Roberts v. Durst*, No. AW-09-11385, 2010 WL 3703296 (D. Md. Sept. 16, 2010), the court found that injuries incurred from a legitimate handcuffing procedure employed "in a good faith effort to impose discipline" did not give rise to an excessive force claim. *Id.* at *5. In *Grayson v. Peed*, 195 F.3d 692 (4th Cir. 1999), the use of restraining measures was necessary to subdue a belligerent pretrial detainee who attempted to muscle his

15

way out of his holding cell and to prevent him from harming himself. *See id.* at 696–97. Under Stout's version of events, however, Stout was behaving normally in the moments before the beating, and the force allegedly employed – throwing him to the ground and beating him repeatedly – far exceeded handcuffing and restraining a detainee. Under Stout's account, there was no justification for throwing him to the floor, or punching and kicking him repeatedly, particularly after he sought shelter under the bench.

Defendants' reliance on *Scott v. Harris*, 550 U.S. 372 (2007), and *Smith v. Ozmint*, 578 F.3d 246 (4th Cir. 2009), is similarly misplaced. In *Scott*, the Supreme Court concluded, in the Fourth Amendment excessive force context, that the nonmoving party's version of events should not have been adopted on summary judgment when the record "blatantly contradicted" his account. 550 U.S. at 380. The record in *Scott*, however, included an undisputed videotape that conclusively discredited the nonmoving party's story that he had been driving cautiously while fleeing from police. *Id.* at 379–81. Likewise, *Smith* was decided based on a review of a videotape of the incident in question. *Smith*, 578 F.3d at 254. The evidence offered in this case is simply not on equal footing with the type of evidence that documented the incident with the level of certainty and reliability as the videotapes in *Scott* and *Smith.* Where, as here, the parties offer dueling affidavits with substantially different accounts, *Scott* instructs that "in such posture, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." 550 U.S. at 378 (citation and internal quotation marks omitted). *Cf. Tolan v. Cotton*, 134 S. Ct. 1861, 1866–68 (2014) (in determining whether police officers were entitled to qualified immunity in the context of an excessive force claim under the Fourth Amendment, concluding that the lower court erred in crediting the testimony of the moving party over the testimony of the nonmoving party).

16

Finally, Defendants argue that Stout's testimony should be discredited because Stout was too intoxicated to remember the events accurately. When Stout was tested at St. Mary's County Detention Center over seven hours after his arrest, his blood alcohol level was .17. *See* Defs.' Mem. Ex. 4. Defendants argue that, under the rate that alcohol dissipates over time, as recognized by the Supreme Court in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), Stout would have been extremely intoxicated – more than three or four times the legal limit – at the time of the incident. Defs.' Reply at 3, ECF No. 14. Stout asserts that he was not extremely intoxicated and that he had a strong recollection of the events that night. Stout Aff. ¶ 13. At the summary judgment stage, the Court must construe the facts in favor of Stout and assume that he remembered the events clearly.

*McNeely* does not render Stout's testimony any less deserving of that deference. The Court discussed the alcohol dissipation rate as part of its evaluation of whether exigent circumstances exist to justify an exception to the warrant requirement to permit blood tests in drunk driving cases. *Id.* at 1560–61. It did not address the impact of particular blood alcohol levels on an individual's ability to perceive or recall events and even noted that dissipation rates could vary based on personal characteristics, such as "weight, gender, and alcohol tolerance." *Id.* Moreover, because the information on blood dissipation rates consisted of testimonial evidence presented at trial in *McNeely*, it is not part of the record in this case and is therefore not appropriate to consider here.[1]

For the reasons stated above, there is a genuine dispute of material fact about whether Defendants used excessive force in violation of the Due Process Clause of the Fourteenth

---

[1] Defendants' reference to *National Enterprises, Inc. v. Barnes*, 201 F.23d 331 (4th Cir. 2000), is similarly unpersuasive. Because all of the parties have an interest in the outcome of this case, all of the submitted affidavits could be characterized as "self-serving." *Id.* at 335.

Amendment and Article 24 of the Maryland Declaration of Rights. Summary judgment is denied as to these claims.

### B.    Race Discrimination

In Count III, Stout brings a claim for a violation of the Equal Protection Clause of the Fourteenth Amendment based on race discrimination. Defendants argue that they are entitled to summary judgment on this claim, as well as the § 1981 claim in Count IV, because Stout does not offer sufficient evidence of discrimination, particularly that similarly situated individuals were treated differently. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation and internal quotation marks omitted). To establish an equal protection violation, the plaintiff must establish that (1) he was treated differently from similarly situated individuals and (2) the unequal treatment resulted from intentional or purposeful discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see also Harrison v. Prince William Cnty. Police Dep't*, 640 F. Supp. 2d 688, 705–06 (E.D. Va. 2009) (applying *Morrison* in the excessive force context).

Under § 1981, a plaintiff must show that (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statute.[2] *See Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 260–61 (5th Cir. 2007); *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *Baltimore-Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 699 (D. Md. 2003); *Buchanan v. Consolidated Stores Corp.*, 125 F. Supp. 2d 730, 734 (D. Md. 2001).

---

[2] As discussed above, § 1981 can provide a basis to challenge discrimination in law enforcement conduct, such as discriminatory use of excessive force. *See supra* Part II.B.

Stout acknowledges that he does not offer any specific comparison to a similarly situated individual of a different race. *See* Pl.'s Opp'n at 11. Instead, he relies on direct evidence that each Defendant used racially derogatory remarks at some point during the incident. Although the use of racial epithets do not necessarily establish an equal protection or § 1981 violation, racially offensive language can be evidence of discriminatory intent when the language is coupled with conduct infringing the plaintiff's rights, *see Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1133 (4th Cir. 1988); *Burton v. Livingston*, 791 F.2d 97, 100 n.1 (8th Cir. 1986); *cf. Bell*, 746 F.2d at 1259. For example, in *Harrison*, the court denied a motion to dismiss a § 1983 equal protection claim against police officers who were alleged to have used racial slurs while pulling the plaintiff from his car, putting him in a headlock, and letting his head hit the pavement. *Harrison*, 640 F. Supp. 2d at 697, 706; *see also Clark ex rel. T.M.J. v. Pielert*, No. 07–3649(DSD/JJG), 2009 WL 35337, at *2, *8 (D. Minn. 2009) (denying summary judgment on an equal protection claim when the officer, who had slammed the plaintiff onto the police car and threw her headfirst into the backseat into the glass divider, had used the term "the ghetto way").

Defendants' reliance on *Owen-Williams v. City of Gaithersburg*, No. PJM 10-185, 2011 WL 53082 (D. Md. Jan. 7, 2011), is misplaced. There, the court concluded that the officer's use of racial slurs during an arrest was insufficient to establish a violation of § 1981 when there was nothing objectionable about the officers' decision to arrest the plaintiff and their physical conduct in arresting him. *Id.* at *4. Thus, although the use of racially derogatory remarks does not itself establish an equal protection violation, such statements combined with impermissible use of excessive force can support such a claim. *See, e.g., Harrison*, 640 F. Supp. 2d at 706; *Clark*, 2009 WL 35337, *8. Likewise, in *Abrams v. Baltimore County*, No. RDB-04-530, 2006

WL 508093 (D. Md. Feb. 27, 2006), also relied upon by Defendants, the reported racially derogatory statement was made two days later, by an officer who had "limited" interactions with the plaintiff, without any "nexus" to the decisions made by others to arrest and interrogate the plaintiff. *Id.* at *6.

Here, the racially derogatory statements are more akin to those in *Harrison* and *Clark* in that they are closely tied to impermissible conduct, giving rise to the inference that Defendants' actions were discriminatorily motivated.   Under Stout's version of the events, Trooper Reuschling said, "Obama can't help your Black ass now," while driving Stout to the barrack without a seatbelt and before leading him into the barrack by his neck with a tight grip.  Soon afterward, Trooper Reuschling and Sergeant Koch participated in beating Stout for 45 seconds. When it was over, Sergeant Koch said, "You don't know who you're fucking with, nigger." Because Stout has submitted evidence of racially offensive language coupled with conduct that allegedly infringes on his rights, a reasonable jury could conclude that Defendants had the discriminatory intent necessary under both the equal protection and § 1981 claims.  The Motion for Summary Judgment based on lack of evidence of discrimination is therefore denied as to these counts.

## IV.    Qualified Immunity for § 1983 Claims

Defendants assert that they are entitled to qualified immunity on Stout's claims under § 1983.  Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Henry*, 501 F.3d at 376–77 (citation and internal quotation marks omitted).  When qualified immunity is asserted, the court must determine two questions:

(1) whether the facts, viewed in the light most favorable to the plaintiff, show that the official violated a constitutional right, and (2) "whether the right was clearly established," – that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Henry*, 501 F.3d at 377.   For qualified immunity to apply, only one of the questions has to be resolved in favor of the defendant. *See Henry*, 501 F.3d at 377.   Courts may address the questions in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

On the first question, the Court has already concluded that a reasonable jury could find that Defendants used excessive force against Stout in violation of the Due Process Clause of the Fourteenth Amendment.   *See supra* Part III.A.   Under Stout's version of events, when Defendants threw Stout down, beat him for 45 seconds, and caused him to suffer fractured ribs, bruises, and a bloodied lip, they exceeded the amount of force necessary to maintain discipline where Stout was handcuffed to the bench and had made no threatening gestures. *See Cobb*, 905 F.2d at 785, 789.

As to the second question, the determination "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (citation and internal quotation marks omitted).   Under this standard, Stout's right to be free from the use of excessive force by law enforcement was clearly established at the time of the beating.   As an arrestee, Stout had a constitutional right to be free from the infliction of unnecessary and wanton pain and suffering. *Orem*, 523 F.3d at 446, 448–49; *Cobb*, 905 F.2d at 785, 789.   There is no justification for beating a handcuffed arrestee who does not pose a threat to himself or the officers. *See Cobb*, 905 F.2d at 785, 789. *Cf. Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994) (in the Fourth Amendment context, finding no qualified

immunity for an officer who without provocation punched and threw down an individual suspected of a minor crime, who resisted only to the extent of trying to protect himself); *Smith*, __ F.3d __, 2015 WL 1219476, at *6–7 (in the Fourth Amendment context, finding, citing *Rowland*, that the unconstitutionality of a police officer throwing an individual to the ground and slamming his knee into her back was clearly established where the individual's only provocation was pulling her arm away from the officer and asking what he was doing).  Although the Court is aware that Defendants have a different account of the events, at this stage of the proceedings, where the Court must view the evidence in the light most favorable to Stout, Defendants are not entitled to qualified immunity on the § 1983 claims.  The Motion for Summary Judgment based on qualified immunity is therefore denied.

## V.     Maryland Statutory Immunity for Article 24 Claim

Defendants argue that two statutes, Md. Code Ann., State Gov't § 12-105 and Md. Code Ann., Cts. & Jud. Proc. § 5-522, immunize them from suit against Stout's claim under Article 24. Section 12-205 provides that "[s]tate personnel shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article."  Md. Code Ann., State Gov't § 12-205 (West 2015).  Section 5-522, in turn, provides that state personnel are immune from tortious liability for acts performed within the scope of their duties without malice or gross negligence:

> State personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence . . . .

Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (West 2015).  Because Defendants were acting as Maryland State Troopers during the incident, they qualify as state personnel and thus fall within the ambit of this statutory immunity.

Defendants assert two arguments in support of their state immunity claim. First, they argue that the claim should be dismissed because, under Maryland law, plaintiffs must allege malice and gross negligence with some specificity. *See* Defs.' Mem. at 20. Here, however, procedural matters relating to pleading are governed by the Federal Rules of Civil Procedure, not state law. *Swift & Co. v. Young*, 107 F.2d 170, 172 (4th Cir. 1939). Federal Rule of Civil Procedure 9(b) allows plaintiffs to allege malice generally. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Although plaintiffs must state a plausible claim for relief, Rule 9(b) provides that there is no such heightened pleading standard for malice in federal court. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012).

Second, Defendants argue that summary judgment is appropriate because Stout has not shown that they acted with malice or gross negligence. *See* Defs.' Mem. at 20–21. Although Stout has not proceeded under a gross negligence theory, he has submitted sufficient evidence to support a finding of malice. Under Maryland law, malice "consists of the intentional doing of a wrongful act without legal justification or excuse." *Elliott v. Kupferman*, 473 A.2d 960, 969 (Md. Ct. Spec. App. 1984). "An act is malicious if it is done knowingly and deliberately, for an improper motive and without legal justification." *Id.* Here, under Stout's account, the facts that one Defendant knocked a handcuffed Stout to the ground without provocation, and that both Defendants beat him for 45 seconds, kicking and punching Stout while he lay handcuffed and helpless on the floor, even while he called for help and sought to crawl under the bench, are sufficient to establish malice, particularly where both Defendants were laughing and used racial epithets. Stout Aff. ¶¶ 10-11. Thus, at this stage of the proceedings, Defendants are not entitled

to statutory immunity to Stout's Article 24 claim.  The Motion to Dismiss or, in the Alternative, for Summary Judgment based on state law immunity is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 10, is GRANTED in part and DENIED in part.  The Motion, treated as a motion to dismiss, is GRANTED as to Count I and the Article 26 claim in Count V and DENIED as to Count IV.  Count I and the Article 26 claim in Count V are DISMISSED with prejudice.  The Motion, treated as a motion for summary judgment, is DENIED as to the remaining claims.  A separate Order follows.

Date:   March 26, 2015

THEODORE D. CHUANG
United States District Judge